**LTL ATTORNEYS LLP**
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
Paul Moskowitz (SBN 219158)
  paul.moskowitz@ltlattorneys.com
Kevin B. Kelly (SBN 274145)
  kevin.kelly@ltlattorneys.com
300 S. Grand Avenue, 14th Floor
Los Angeles, CA 90071
Tel:   (213) 612-8900
Fax:   (213) 612-3773

Attorneys for Plaintiffs
JEAN ROYÈRE SAS and
JELENA MARKOVIC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN ROYÈRE SAS, a French business entity; and JELENA MARKOVIC, an individual, | CASE NO.:  2:22-cv-1507 |
| Plaintiffs, | **COMPLAINT FOR:** |
| vs. | **1. COPYRIGHT INFRINGEMENT,** |
| | **2. CONTRIBUTORY COPYRIGHT INFRINGEMENT,** |
| EDITION MODERN, a California corporation; and DENIS DE LA MÉSIÈRE, an individual, | **3. VICARIOUS COPYRIGHT INFRINGEMENT,** |
| Defendants. | **4. TRADEMARK INFRINGEMENT,** |
| | **5. CONTRIBUTORY TRADEMARK INFRINGEMENT** |
| | **6. VICARIOUS TRADEMARK INFRINGEMENT** |
| | **7. TRADE DRESS INFRINGEMENT,** |
| | **8. FALSE ENDORSEMENT, AND** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**9. DECLARATORY RELIEF.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Jean Royère SAS and Jelena Markovic hereby assert the following claims against Defendants Edition Modern and Denis de la Mésière:

## THE PARTIES

1.      Plaintiff Jean Royère SAS is a business entity organized and existing under the laws of France with its principal place of business in Paris, France.

2.      Plaintiff Jelena Markovic is a resident of California, although she is temporarily located in Serbia.

3.      Defendant Edition Modern is a California with its principal place of business in Los Angeles, California.

4.      Defendant Denis de la Mésière is an individual who resides in Los Angeles, California. Plaintiff is informed and believes, and on that basis alleges, that Mr. de la Mésière is a French citizen.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court under federal question jurisdiction as the claims alleged herein seek relief under the copyright and trademark laws of the United States. *See* 28 U.S.C. §§ 1331 and 1338.

6.      The claims asserted herein arose in this judicial district and all Defendants reside and do business in this judicial district. Venue is proper in judicial district pursuant to 28 U.S.C. section 1391(b)(1) as Defendants are residents of California and reside in this judicial district. Venue in this judicial district also is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

1

## FACTS RELEVANT TO ALL CLAIMS

2

3   **Ms. Markovic Holds the Copyrights to the Creations of French Artist Jean Royère**

4          7.      Mr. Jean Royère (born in 1902) was a world-famous and world-celebrated

5   artist who created several hundreds of pieces of original furniture designs, the vast

6   majority of which were custom orders. A number of the pieces he created are part of the

7   collections of the Musée des Arts Décoratifs (Paris), and his creations benefit from a

8   particularly strong interest on the international art market. (The original works of Mr.

9   Royère are referenced hereafter as the "Original Works".) A French national, Mr. Royère

10  emigrated to Pennsylvania in or about 1972, where he lived until he died on May 14,

11  1981.

12         8.      Ms. Markovic is Mr. Royère's sole legal successor. At the time of his death,

13  Mr. Royère had no children and was not married. In accordance with French law, Mr.

14  Royère made a holographic will that he personally deposited on April 24, 1980 at the

15  Public Notaries Office "D. Wargny-Y. Dobrovolski-J. Lelong", in Colombes (France).

16  Mr. Royère's will covered the disposition of his entire estate, including, but not limited

17  to, all of his property located in France. After making a few specific bequests, his will

18  directed that the remainder of his estate – including the intellectual property rights at

19  issue herein – be distributed to his life partner, Dr. Mihaïlo Dordevic.

20         9.      In a decision dated July 17, 1981, the Tribunal de Grande Instance de Paris

21  determined that Dr. Dordevic was the beneficiary of all of Mr. Royère's property rights,

22  including, without limitation, all copyrights and other intellectual property rights for Mr.

23  Royère's creations (*i.e.*, the Original Works). At the time of his death on August 16,

24  1991, Dr. Dordevic had no children and was not married. Dr. Dordevic had a will that

25  directed that his entire estate be distributed to his niece, Plaintiff Jelena Markovic.

26         10.     In a decision dated July 16, 1992, the Superior Court of the State of

27  California determined that Ms. Markovic was the sole beneficiary of all of Dr.

28  Dordevic's property rights, including the copyrights and other intellectual property

1  rights in the Original Works at issue in this case. Ms. Markovic's status as the sole legal
2  successor to Dr. Dordevic's property rights was recently confirmed by the Tribunal
3  Judiciaire de Paris in a decision dated September 7, 2021.

4      11.    Ms. Markovic therefore holds the copyrights for Mr. Royère's creations,
5  including the Original Works, by virtue of the 1981 transfer of Jean Royère's estate to
6  Dr. Dordevic in France and the 1991-1992 transfer of Dr. Dordevic's estate to her in the
7  United States.

8

9  **Jean Royère SAS Has Trademark Rights to the JEAN ROYÈRE Mark**

10     12.    On November 7, 2019, Plaintiff Jean Royère SAS filed a trademark
11 application for the word mark JEAN ROYÈRE in international classes 11, 20, and 27
12 with the USPTO. The application was published for opposition on September 1, 2020,
13 and the mark was registered on November 17, 2020, as Registration No. 6197569.

14

15 **Edition Modern Sells Counterfeit Jean Royère Furniture**

16     13.    Defendant Denis de la Mésière founded Edition Modern in 2006, with the
17 stated purpose of marketing copies of furniture and lighting created by iconic French
18 designers now deceased, including Jean Royère. Plaintiffs are informed and believe, and
19 on that basis allege, that Mr. de la Mésière has extensive experience in the antique and
20 design fields and broad knowledge about the work of various French designers, including
21 Jean Royère. Plaintiffs are informed and believe, and on that basis allege, that Mr. de la
22 Mésière is the Chief Executive Officer, Chief Financial Officer, and majority owner of
23 Edition Modern.

24     14.    On its website, https://www.editionmodern.com, Edition Modern advertises
25 numerous counterfeit Jean Royère pieces for sale. Prior to receiving a formal cease and
26 desist letter from Ms. Markovic's legal counsel in early 2020, Edition Modern's website
27 described these counterfeits as "re-editions" of Jean Royère's creations. After it received
28 that cease and desist letter, Edition Modern changed the description of those items on its

website to being "in the style of" Jean Royère. However, a comparison of the Original Works to the pieces sold by Edition Modern makes evident that Edition Modern has simply copied Mr. Royère's original designs in their entirety.

15.     Edition Modern's website includes a page dedicated solely to the sale of unauthorised copies of Jean Royère creations; *at least fifty (50) counterfeit pieces of furniture and works of art* are listed on that page. (The counterfeit Original Works sold by Edition Modern are referred to herein as the "Counterfeit Goods.") As depicted on Edition Modern's website, each of the Counterfeit Goods is virtually indistinguishable from one of the Original Works. Edition Modern's website identifies these pieces as being manufactured in France and Los Angeles, California.[1]

16.     Edition Modern has sold, and continues to sell, Counterfeit Goods on online platforms such as *Incollect*,[2] *eporta*,[3] *rubylux*, and *two enlighten*[4]— which are platforms that specialise in the sale of high-quality furniture.

17.     In addition, Edition Modern – under the direct control and knowing participation of Mr. de la Mésière – has also sold Counterfeit Goods directly to multiple prominent architects and designers, both in California and elsewhere. Edition Modern's website identifies a list of its clients, an unknown number of whom may have purchased Counterfeit Goods from Edition Modern.[5]

**Plaintiffs Discover that Defendant Edition Modern is Selling Counterfeit Products**

18.     At the beginning of 2021, Ms. Markovic discovered that a French craftsman, Mr. Xavier Mennessier (a blacksmith established in France), had been manufacturing certain Counterfeit Goods at the request and direction of Edition Modern. In September 2021, Plaintiff Markovic also discovered that Edition Modern was

---

[1] https://www.editionmodern.com/about.
[2] https://www.incollect.com/artists/jean-roy-re-re-edition.
[3] https://www.eporta.com/search/?search_text=edition+modern.
[4] https://www.twoenlighten.com/edition-modern.
[5] https://www.editionmodern.com/clients.

1    marketing some Counterfeit Goods for sale in France.

2          19.    Ms. Markovic initiated a seizure proceeding against Mr. Mennessier's
3    company, Mennessier LLC, which revealed that he and his company had made hundreds
4    of copies of fifty-three works by Jean Royère at the behest of Edition Modern. The legal
5    proceedings against Mr. Mennessier and his company in France are ongoing.

6          20.    In the course of the seizure proceeding against Mennessier LLC, Ms.
7    Markovic obtained documents that demonstrate that Mr. de la Mésière was extensively
8    involved in every aspect of Edition Modern's infringing conduct. Indeed, viewed
9    together, these documents establish that Mr. de la Mésière was by far the primary – if
10   not the only – person from Edition Modern involved in the company's infringing
11   conduct.

12         21.    For example, documents from the French legal proceedings demonstrate
13   that Mr. de la Mésière was the driving force behind the creation of the Counterfeit
14   Goods. He provided Mr. Mennessier with pictures and detailed drawings of Original
15   Works that he wanted Mr. Mennessier to copy, including, in some instances, Original
16   Works that specific clients of Mr. Mennessier and Edition Modern had requested. He
17   closely supervised the manufacture of the Counterfeit Goods; he reviewed parts and
18   prototypes of Counterfeit Goods as Mr. Mennessier made them to ensure that they
19   closely resembled Jean Royère's Original Works, provided instructions to Mr.
20   Mennessier on how the inchoate counterfeits should be changed to make them more like
21   the Original Works, and gave final approval of Mr. Mennessier's work when he thought
22   the subject Counterfeit Goods were sufficiently similar to the Original Works.

23         22.    In the course of the seizure proceeding against Mr. Mennessier's company,
24   Ms. Markovic obtained proof that Edition Modern was in the process of selling certain
25   Counterfeit Goods to a luxury hotel in Paris, France. Mr. de la Mésière was directly and
26   materially involved in this sale. Ms. Markovic subsequently initiated a seizure
27   proceeding against said hotel. A settlement of this seizure action has since made it
28   possible to remove and destroy these counterfeits, and stop the collaboration between

COMPLAINT

1    the hotel and Defendants.

2        23.    Since she initiated the action against Mr. Mennessier's company, Ms.
3    Markovic has discovered that various architects also were working with Edition Modern
4    to obtain Counterfeit Goods. For example, Ms. Markovic is suing a luxury brand of
5    international renown in France regarding its acquisition of certain Counterfeit Goods
6    from Edition Modern (through an American architect of international renown). Plaintiffs
7    are informed and believe, and on that basis allege, that Mr. de la Mésière was directly
8    involved in working with these architects to provide them and their clients with
9    Counterfeit Goods.

10        24.    In sum, Edition Modern and Mr. de la Mésière have induced and instigated
11    the manufacture of numerous counterfeit copies of over fifty (50) different Original
12    Works, that they then marketed and sold, all without Plaintiffs' consent and in
13    contravention of Plaintiffs' intellectual property rights.

14        25.    On or about February 16, 2021, Plaintiffs' counsel sent a cease and desist
15    letter to Edition Modern objecting to its unauthorized manufacture, marketing,
16    promotion, and sale of the Counterfeit Goods. To date, Edition Modern has failed and
17    refused to comply with any of the demands set out in the cease and desist letter, and
18    continues to offer counterfeit copies of Original Works for sale.

19        26.    As a result of Defendants' actions described above, Plaintiffs have been
20    directly damaged, and are continuing to be damaged, by the unauthorized manufacture,
21    reproduction, marketing, promotion, and sale of the Counterfeit Goods. Defendants have
22    never accounted to, or otherwise paid Plaintiffs for, the use of the Original Works.

23        27.    Defendants' acts are causing, and unless restrained, will continue to cause
24    damage and immediate, irreparable harm to Plaintiffs for which Plaintiffs have no
25    adequate remedy at law.

26

27

28

# FIRST CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

### 17 U.S.C. § 501

### (By Plaintiff Jelena Markovic against

### Defendants Edition Modern and Denis de la Mésière)

28.     Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

29.     Ms. Markovic owns a valid copyright to the artistic works of Jean Royère.

30.     Edition Modern and Mr. de la Mésière copied original expression from the copyrighted Jean Royère creations in violation of Ms. Markovic's rights by creating, marketing, and selling numerous counterfeit copies of over fifty (50) separate Original Works without consent. The accompanying Exhibit 1 demonstrates, on a side-by-side basis, eight examples of Defendants' infringing acts. These include the following two examples of Defendant's slavish copying of Original Works: (1) the *Coeur*[6] lamp, and (2) the *Val D'Or* table.

31.     **Jean Royère's *Cœur* lamp:**  Jean Royère designed the *Coeur* lamp in or about 1960. This lamp is renowned for evoking two motifs reminiscent of childhood and enchantment: a flower-shaped base and a heart-shaped stand. Below is a picture of the original *Coeur* lamp.

---

[6] The French word "coeur" means "heart" in English.



32.    Edition Modern and Mr. de la Mésière have slavishly copied Jean Royère's
original *Coeur* lamp, as shown in the picture below from the Edition Modern website.



33.    **Jean Royère's *Val D'Or* table:**  Jean Royère designed the *Val D'Or* table

in 1955. What is most striking about this original creation was Mr. Royère's choice of a circular transparent glass top that contrasts with the broken line of the structure and the void created by the line formed by the structure. Below are two pictures of the original *Val D'Or* table.



VAL D'OR
Table basse, vers 1955
Métal laqué et verre, 32 × ø 83 cm
*Coffee table, ca. 1955*
*Lacquered metal, glass, 12.6 × ø 32.7 in.*

VAL D'OR
Table basse, vers 1962
Métal laqué et verre, 32 × ø 83 cm
*Coffee table, ca. 1962*
*Lacquered metal, glass, 12.6 × ø 32.7 in.*
Provenance : M. Maurel

34.    Edition Modern and Mr. de la Mésière have slavishly copied Jean Royère's original *Val D'Or* table, as shown in the picture below from the Edition Modern website.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    35.    As a direct and proximate result of Defendants' infringing conduct as
16 alleged herein, Ms. Markovic has suffered actual damages in an amount that will be
17 proven at the trial in this matter.

18    36.    Ms. Markovic is informed and believes, and on that basis alleges, that
19 Defendants' infringement of her copyrights was willful, reckless, and/or in blatant
20 disregard for her rights as a copyright holder. Accordingly, Ms. Markovic is entitled to
21 an award of willful, exemplary, and enhanced statutory damages, disgorgement of
22 profits, and/or the preclusion from the calculation of her damages of certain deductions
23 or other benefits that otherwise might accrue to Defendants.

24    37.    As a direct and proximate result of the Defendants' infringing conduct
25 alleged herein, Ms. Markovic has sustained and will continue to sustain substantial,
26 immediate, and irreparable injury, for which there is no adequate remedy at law. Ms.
27 Markovic is informed and believes, and on that basis alleges, that unless Defendants'
28 infringing conduct is enjoined by this Court, Defendants will continue to infringe the

Original Works. Plaintiff Markovic therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' ongoing infringing conduct.

## SECOND CLAIM FOR RELIEF

### CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (By Plaintiff Jelena Markovic against Defendant Denis de la Mésière)

38.     Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

39.     Denis de la Mésière is the founder of Edition Modern. Ms. Markovic is informed and believes, and on that basis alleges, that Mr. de la Mésière acted as Edition Modern's Chief Executive Officer and Chief Financial Officer at all times relevant herein.

40.     Mr. de la Mésière had knowledge of Edition Modern's infringing activity alleged herein, and materially induced, caused, and contributed to that infringing activity. Indeed, as alleged above, Mr. de la Mésière was instrumental in procuring and overseeing the unauthorized manufacture of the Counterfeit Goods, as well as the marketing, promotion, and sale of those Counterfeit Goods.

41.     Ms. Markovic is informed and believes, and on that basis alleges, that Mr. de la Mésière's contributory infringement of her copyrights was willful, reckless, and/or in blatant disregard for her rights as a copyright holder. Accordingly, Ms. Markovic is entitled to an award of willful, exemplary, and enhanced statutory damages, disgorgement of profits, and/or the preclusion from the calculation of her damages of certain deductions or other benefits that otherwise might accrue to Mr. de la Mésière.

42.     As a direct and proximate result of the Mr. de la Mésière's infringing conduct alleged herein, Ms. Markovic has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Ms. Markovic is informed and believes, and on that basis alleges, that unless Mr. de la Mésière's infringing conduct is enjoined by this Court, Mr. de la Mésière will continue

to infringe, and/or materially contribute to the infringement of, the Original Works. Ms. Markovic therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Mr. de la Mésière's ongoing infringing conduct.

## THIRD CLAIM FOR RELIEF

## VICARIOUS COPYRIGHT INFRINGEMENT

**(By Plaintiff Jelena Markovic against Defendant Denis de la Mésière)**

43.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

44.    Denis de la Mésière is the founder of Edition Modern. Ms. Markovic is informed and believes, and on that basis alleges, that Mr. de la Mésière acted as Edition Modern's Chief Executive Officer and Chief Financial Officer at all times relevant herein. Ms. Markovic is further informed and believes, and on that basis alleges, that Mr. de la Mésière was the majority beneficial owner of Edition Modern at all times relevant herein.

45.    Mr. de la Mésière had full knowledge of Edition Modern's infringing conduct alleged herein. In his capacity as Edition Modern's Chief Executive Officer, Chief Financial Officer, and majority beneficial owner, Mr. de la Mésière had the right and ability to supervise and control Edition Modern infringing conduct. Mr. de la Mésière's right and ability to supervise and control Edition Modern infringing conduct included both a legal right to stop or limit Edition Modern's infringing conduct, as well as the practical ability to do so.

46.    Mr. de la Mésière did not exercise his right and ability to supervise and control Edition Modern to stop or limit the company's infringing conduct as alleged herein. To the contrary, as alleged above, Mr. de la Mésière actively participated in and promoted that infringing conduct.

47.    Ms. Markovic is informed and believes, and on that basis alleges, that Mr. de la Mésière obtained a financial benefit the infringing activity alleged herein.

48.    Ms. Markovic is informed and believes, and on that basis alleges, that Mr. de la Mésière's vicarious infringement of her copyrights was willful, reckless, and/or in blatant disregard for her rights as a copyright holder. Accordingly, Ms. Markovic is entitled to an award of willful, exemplary, and enhanced statutory damages, disgorgement of profits, and/or the preclusion from the calculation of her damages of certain deductions or other benefits that otherwise might accrue to Mr. de la Mésière.

49.    As a direct and proximate result of the Mr. de la Mésière's infringing conduct alleged herein, Ms. Markovic has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Ms. Markovic is informed and believes, and on that basis alleges, that unless Mr. de la Mésière's infringing conduct is enjoined by this Court, Mr. de la Mésière will continue to vicariously infringe the Original Works. Ms. Markovic therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Mr. de la Mésière's ongoing vicariously infringing conduct.

## FOURTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)
**(By Plaintiff Jean Royère SAS against Defendant Edition Modern)**

50.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

51.    JEAN ROYÈRE is a valid and protectable trademark.

52.    Plaintiff Jean Royère SAS owns the trademark JEAN ROYÈRE, as indicated in Trademark Registration No. 6197569.

53.    Defendant Edition Modern has used, and continues to use, the JEAN ROYÈRE mark to describe its own Counterfeit Goods without Jean Royère SAS's consent, and in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

54.     As a direct and proximate result of the Edition Modern's infringing conduct alleged herein, Jean Royère SAS has suffered actual damages in an amount that will be proven at the trial of this matter.

55.     Jean Royère SAS is informed and believes, and on that basis alleges, that Edition Modern's infringement of the JEAN ROYÈRE trademark through the manufacture and sale of counterfeit goods was willful, reckless, and/or in blatant disregard for Jean Royère SAS's rights as a trademark holder. Accordingly, Jean Royère SAS is entitled to an award of willful, exemplary, and enhanced statutory damages, and disgorgement of Edition Modern's wrongfully obtained profits.

56.     As a direct and proximate result of the Edition Modern's infringing conduct alleged herein, Plaintiff Jean Royère SAS has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Jean Royère SAS is informed and believes, and on that basis alleges, that unless Edition Modern's infringing conduct is enjoined by this Court, Edition Modern will continue to infringe Jean Royère SAS's JEAN ROYÈRE trademark. Jean Royère SAS therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Edition Modern's ongoing infringing conduct.

## FIFTH CLAIM FOR RELIEF

### CONTRIBUTORY TRADEMARK INFRINGEMENT

### (By Plaintiff Jean Royère SAS against Defendant Denis de la Mésière)

57.     Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

58.     As indicated by Trademark Registration No. 6197569, JEAN ROYÈRE is a valid and protectable trademark owned by Plaintiff Jean Royère SAS.

59.     Defendant Edition Modern used the JEAN ROYÈRE mark to describe its own Counterfeit Goods without Jean Royère SAS's consent in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or

approval of the goods.

60.     Denis de la Mésière is the founder of Edition Modern. Jean Royère SAS is informed and believes, and on that basis alleges, that Mr. de la Mésière acted as Edition Modern's Chief Executive Officer and Chief Financial Officer at all times relevant herein.

61.     Mr. de la Mésière had knowledge of Edition Modern's unauthorized use of the JEAN ROYÈRE mark to describe its own Counterfeit Goods as described herein, and intentionally and materially induced, caused, and contributed to that infringing activity. Indeed, Mr. de la Mésière was the primary – if not the only – person from Edition Modern involved in the company's infringing conduct.

62.     Jean Royère SAS is informed and believes, and on that basis alleges, that Mr. de la Mésière's contributory infringement of its JEAN ROYÈRE mark through the manufacture, promotion, marketing, and sale of counterfeit goods was willful, reckless, and/or in blatant disregard for Jean Royère SAS's rights as a trademark holder. Accordingly, Jean Royère SAS is entitled to an award of willful, exemplary, and enhanced statutory damages, and disgorgement of Mr. de la Mésière's wrongfully obtained profits.

63.     As a direct and proximate result of Mr. de la Mésière's infringing conduct alleged herein, Jean Royère SAS has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Jean Royère SAS is informed and believes, and on that basis alleges, that unless Mr. de la Mésière's infringing conduct is enjoined by this Court, Mr. de la Mésière will continue to infringe Jean Royère SAS's JEAN ROYÈRE trademark. Jean Royère SAS therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Mr. de la Mésière's ongoing infringing conduct.

## SIXTH CLAIM FOR RELIEF

## VICARIOUS TRADEMARK INFRINGEMENT

### (By Plaintiff Jean Royère SAS against Defendant Denis de la Mésière)

64.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

65.    Denis de la Mésière is the founder of Edition Modern. Jean Royère SAS is informed and believes, and on that basis alleges, that Mr. de la Mésière acted as Edition Modern's Chief Executive Officer and Chief Financial Officer at all times relevant herein. Jean Royère SAS is further informed and believes, and on that basis alleges, that Mr. de la Mésière was the majority beneficial owner of Edition Modern at all times relevant herein.

66.    Mr. de la Mésière had full knowledge of Edition Modern's infringement of Jean Royère SAS's JEAN ROYÈRE mark alleged herein. In his capacity as Edition Modern's Chief Executive Officer, Chief Financial Officer, and majority beneficial owner, Mr. de la Mésière had the ability to bind Edition Modern in transactions with third parties, as well as the right and ability to supervise and control Edition Modern infringing conduct. Mr. de la Mésière's right and ability to supervise and control Edition Modern infringing conduct included both a legal right to stop or limit Edition Modern's infringing conduct, as well as the practical ability to do so.

67.    Mr. de la Mésière did not exercise his right and ability to supervise and control Edition Modern so as to stop or limit the company's infringing conduct as alleged herein. To the contrary, as alleged herein, Mr. de la Mésière actively participated in and promoted that infringing conduct.

68.    Jean Royère SAS is informed and believes, and on that basis alleges, that Mr. de la Mésière obtained a financial benefit from the infringing activity alleged herein.

69.    Jean Royère SAS is informed and believes, and on that basis alleges, that Mr. de la Mésière's vicarious infringement of its JEAN ROYÈRE mark through the manufacture and sale of counterfeit goods was willful, reckless, and/or in blatant

disregard for Jean Royère SAS's rights as a trademark holder. Accordingly, Jean Royère SAS is entitled to an award of willful, exemplary, and enhanced statutory damages, and disgorgement of Mr. de la Mésière's wrongfully obtained profits.

70.    As a direct and proximate result of Mr. de la Mésière's infringing conduct alleged herein, Jean Royère SAS has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Jean Royère SAS is informed and believes, and on that basis alleges, that unless Mr. de la Mésière's infringing conduct is enjoined by this Court, Mr. de la Mésière will continue to infringe Jean Royère SAS's JEAN ROYÈRE trademark. Jean Royère SAS therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Mr. de la Mésière's ongoing infringing conduct.

**SEVENTH CLAIM FOR RELIEF**

**TRADE DRESS INFRINGEMENT**

**15 U.S.C. § 1125**

**(By Plaintiff Jean Royère SAS against Defendant Edition Modern)**

71.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

72.    The Original Works designed by Jean Royère are inherently distinctive and nonfunctional and have become well-known and identified in the market as originating with Jean Royère.

73.    Plaintiff Jean Royère SAS owns the intellectual property rights to the distinctive trade dress present in the Original Works.

74.    Defendant Edition Modern used the above-mentioned trade dress without the consent of Jean Royère SAS in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Edition Modern's goods.

75.    Specifically, a side-by-side comparison of the Counterfeit Goods and the

Original Works clearly demonstrates that each of the Counterfeit Goods is a copy of one of the Original Works.

76.    Edition Modern's sale of the Counterfeit Goods constitutes an attempt to trade on the goodwill and reputation associated with the Jean Royère name, as well as the distinctive trade dress of the Original Works.

77.    Jean Royère SAS has suffered actual damages in an amount according to proof.

78.    Jean Royère SAS is informed and believes, and on that basis alleges, that Edition Modern's infringement of its trade dress through the manufacture and sale of counterfeit goods was willful, reckless, and/or in blatant disregard for Jean Royère SAS's rights,. Accordingly, Jean Royère SAS is entitled to an award of willful, exemplary, and enhanced statutory damages, and disgorgement of Edition Modern's wrongfully obtained profits.

79.    As a direct and proximate result of the Edition Modern's infringing conduct alleged herein, Plaintiff Jean Royère SAS has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Jean Royère SAS is informed, and on that basis allege, that unless Edition Modern's infringing conduct is enjoined by this Court, Edition Modern will continue to infringe Plaintiff Jean Royère SAS' intellectual property rights to the distinctive trade dress present in the Original Works. Jean Royère SAS therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Edition Modern's ongoing infringing conduct.

## EIGHTH CLAIM FOR RELIEF

### FALSE ENDORSEMENT

### 15 U.S.C. § 1125

### (By Plaintiff Jean Royère SAS against Defendant Edition Modern)

80.    Plaintiffs incorporate the previous paragraphs by reference as though fully

set forth herein.

81.    As discussed above, Edition Modern falsely represents the Counterfeit Goods as being affiliated with Jean Royère on its website and to its customers.

82.    Edition Modern's use of the Jean Royère name and manufacture of the Counterfeit Goods deceives, or is likely to deceive, consumers in a material way, as they will likely believe the Counterfeit Goods are genuine Jean Royère products or are otherwise affiliated with Jean Royère.

83.    Edition Modern's false endorsement has occurred online and in interstate commerce.

84.    Edition Modern's conduct has caused and will continue to cause commercial injury to Jean Royère SAS.

85.    As a direct and proximate result of the Edition Modern's conduct alleged herein, Jean Royère SAS has suffered actual damages in an amount that will be proven at the trial of this matter.

86.    As a direct and proximate result of the Edition Modern's conduct alleged herein, Plaintiff Jean Royère SAS has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Jean Royère SAS is informed and believes, and on that basis alleges, that unless Edition Modern's conduct is enjoined by this Court, Edition Modern will continue to falsely represents the Counterfeit Goods as being affiliated with Jean Royère. Jean Royère SAS therefore is entitled to preliminary and permanent injunctive relief to restrain and enjoin Edition Modern's ongoing infringing conduct.

## NINTH CLAIM FOR RELIEF
### DECLARATORY RELIEF
### (By Plaintiff Jean Royère SAS against Defendant Edition Modern)

87.    Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

88.    On November 9, 2021 – after being advised that it was infringing Plaintiffs' intellectual properties – Edition Modern filed a federal trademark application for JEAN ROYÈRE for furniture and lighting. This application is the subject of Serial No. 97115827.

89.    In its trademark application, Edition Modern submitted a declaration in which it attested (under the penalties listed in 18 U.S.C. § 1001) that: (1) It is the owner of the trademark sought to be registered; (2) It is using the mark in commerce on or in connection with the goods listed in the application; and (3) The specimens it submitted show the mark as Edition Modern is using it on the goods listed in the application.

90.    Also on November 9, 2021, Edition Modern petitioned the USPTO to cancel Plaintiff Jean Royère SAS's federal trademark registration for the JEAN ROYÈRE mark, initiating Cancellation Proceeding 92078410.

91.    In the petition to cancel, Edition Modern alleged that Jean Royère SAS's use of the federally registered JEAN ROYÈRE trademark and Edition Modern's purported use on furniture and lighting creates a likelihood of confusion.

92.    Plaintiff Jean Royère SAS is the only entity entitled to use and register the JEAN ROYÈRE name in the United States. Therefore, Jean Royère SAS is the sole and senior user of the JEAN ROYÈRE trademark in the United States.

93.    None of the uses that Defendant Edition Modern alleges entitles – or has ever entitled – Edition Modern to any trademark rights in the JEAN ROYÈRE name for any goods or services. Moreover, Jean Royère SAS is informed and believes, and on that basis alleges, that Edition Modern has not engaged in any uses that entitle it - or have ever entitled it - to any trademark rights in the JEAN ROYÈRE name for any goods or services.

94.    Thus, the declaration Edition Modern submitted in support of Serial No. 97115827 is not correct, whether knowingly or not, and it cannot properly support the issuance of a trademark registration.

95.    Edition Modern's use of the JEAN ROYÈRE name in connection with

Counterfeit Goods, as alleged herein, disparages and falsely suggests a connection with the late, world-famous artist Jean Royère, in violation of 15 U.S. Code § 1052. As a result Edition Modern's trademark application must be withdrawn.

96.    Edition Modern's petition to cancel is likewise improper and must be dismissed.

97.    Thus, Plaintiffs contend that: (1) Edition Modern's federal trademark application for JEAN ROYÈRE is improper; (2) The declaration Edition Modern submitted with its trademark application is inaccurate and improper; and (3) Edition Modern's petition to cancel is inaccurate and improper.

98.    Accordingly, there exists an Article II actual case and controversy between the parties as to whether Edition Modern's trademark application and petition to cancel should be withdrawn, refused, or denied.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jean Royère SAS and Jelena Markovic pray for judgment as follows:

1.    That Defendant Edition Modern has violated Section 501 of the Copyright Act (17 U.S.C. § 501), both willfully and otherwise.

2.    That Defendant Edition Modern has violated Section 15 U.S.C. § 1114(1) of the Lanham Act (17 U.S.C. § 1114(1)), both willfully and otherwise.

3.    That Defendant Edition Modern has violated Section 1125 of the Lanham Act (15 U.S.C. § 1125), both willfully and otherwise.

4.    That Defendant Denis de la Mésière is liable for contributory copyright infringement, both willful and otherwise;

5.    That Defendant Denis de la Mésière is liable for vicarious copyright infringement, both willful and otherwise;

6.    That Defendant Denis de la Mésière is liable for contributory trademark infringement, both willful and otherwise;

7.    That Defendant Denis de la Mésière is liable for vicarious trademark infringement, both willful and otherwise;

8.    Granting a preliminary and subsequent permanent injunction enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities from:

       a.    Manufacturing, reproducing, distributing, marketing, advertising, promoting, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, or sell the Counterfeit Goods and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Original Works;

       b.    Engaging in any activity that infringes Plaintiffs' rights in the Original Works; and

       c.    Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) or (b).

9.    Ordering Defendants to provide an accounting of their profits attributable to their infringing conduct, including Defendants' profits from sales of the Counterfeit Goods and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Original Works.

10.    Ordering Defendants to destroy or deliver up for destruction all materials in their possession, custody, or control that they used in connection with their infringing conduct, including without limitation all remaining inventory of the Counterfeit Goods and any products and works that embody any reproduction or other copy or colorable imitation of the Original Works, as well as all means for manufacturing them.

11.    Ordering Defendants, at their own expense, to recall the Counterfeit Goods from any distributors, retailers, vendors, or others that have distributed the Counterfeit Goods on Defendants' behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Counterfeit Goods or the Original

Works, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to them.

12. Declaring that:

    a. Edition Modern's U.S. Trademark Application, Serial No. 97115827, is improper, and Edition Modern must expressly withdraw the application with prejudice;

    b. The USPTO shall deem Trademark Application Serial No. 97115827 abandoned or otherwise terminated;

    c. Defendant Edition Modern's petition to cancel Jean Royère SAS's trademark – which initiated USPTO cancellation proceeding No. 92078410 – is meritless and improper; and Defendant Edition Modern must expressly stipulate to dismissal of the cancellation proceeding with prejudice;

    d. The USPTO shall dismiss the pending cancellation proceeding, No. 92078410 with prejudice;

13. Awarding Plaintiffs:

    a. Defendants' profits obtained as a result of their infringing conduct, including, but not limited to, all profits from sales and other exploitation of the Original Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Counterfeit Goods or the Original Works, or in the Court's discretion, such amount as the Court finds to be just and proper;

    b. Damages Plaintiffs sustained as a result of Defendants' infringing conduct, in an amount to be proven at trial;

    c. Should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits, including enhancements for willful infringement; and

d.  Plaintiffs' reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

14.    Awarding Plaintiffs interest, including pre-judgment and post-judgment interest, on the foregoing sums.

15.    Awarding such other and further relief as the Court deems just and proper.

DATED: March 4, 2022                    **LTL ATTORNEYS LLP**

By:   /s/ Prashanth Chennakesavan
_____
Prashanth Chennakesavan
Paul Moskowitz
Kevin B. Kelly
Attorneys for Plaintiffs
Jelena Markovic and Jean Royère SAS

1

## DEMAND FOR JURY TRIAL

2         Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues

3    raised by the Complaint that are triable by jury.

4

5    DATED: March 4, 2022                    **LTL ATTORNEYS LLP**

6

7                                      By:    /s/ Prashanth Chennakesavan
                                             _____
8                                             Prashanth Chennakesavan
                                              Paul Moskowitz
9                                             Kevin B. Kelly
                                              Attorneys for Plaintiffs
10                                            Jelena Markovic and Jean Royère SAS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28